UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re: Kevin Ernst,                                       Case No. 09-57667-wsd
                                                                                                 Chapter 13
      Debtor                                     Hon. Walter Shapero

_____/

Michigan Educational Credit Union,

      Plaintiff

v.                                                                          Adv. Pro. No. 12-04604-wsd

Kevin Ernst,

      Defendant

_____/

## **OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In 1994, Debtor and his then girlfriend Leslie Ziegenhorn purchased property located at 1260 Robblee Road, Milford, Michigan. In 1997, Ziegenhorn moved from Michigan to California. On March 6, 2003, Debtor and Ziegenhorn executed a Home Equity Line of Credit ("2003 Mortgage") with Michigan Education Credit Union ("Plaintiff") in the amount of $75,000. The 2003 Mortgage was signed by Debtor, individually, and by Debtor, acting pursuant to a power of attorney from Ziegenhorn dated February 17, 2003, which granted Debtor the authority to sign the 2003 Mortgage on Ziegenhorn's behalf. On March 31, 2006, the said parties entered into and executed an Agreement to Modify Mortgage Loan ("2006 Modification"). The 2006 Modification provided:

    THIS AGREEMENT made this 31st day of March 2006 between Kevin S. Ernst, a single man and Leslie A. Ziegenhorn, a single woman, by Kevin S. Ernst

1

> as Attorney in Fact, as Joint Tenants with Full Rights of Survivorship, whose Power of Attorney Documents is attached for recorded as Exhibit A…
>
> WITNESSETH that the borrower and lender agree that a certain mortgage, bearing the date of March 6, 2003 and recorded on April 14, 2003, Liber 28790 Page 167 of Plats, Oakland County Records, covering land situated in the Township of Milford, Oakland County Records, Michigan, described as… 1260 Robblee Road… shall be and hereby is modified by the terms of this Agreement.
>
> Whereas, said mortgage secures a Home Equity Line of Credit Contract dated March 6, 2003 said contract providing a line of credit limit of $75.000.00 and, Whereas, borrower has requested that the lender increase borrower's line of credit limit to $166,500.00.
>
> Now therefore, for a valuable consideration, the receipt of which is hereby acknowledged, borrower and lender hereby agree to the modified credit limit noted above. The parties further agree that the above-described mortgage shall secure lender's loan advances up to the new credit limit of $166,500.00 dated March 31, 2006.
>
> The Borrower and the Lender herein agree that all other terms and conditions set forth in the original mortgage hereinbefore mentioned shall continue in full force and effect unabated by the terms of this Modification Agreement except as specifically provided herein.

Complaint Ex. 10; Pl. Response to Def. Mot. Sum. J., Dkt. 74, Ex. 10. The 2006 Modification was signed by Debtor, individually, and by Debtor acting pursuant to a power of attorney, for Ziegenhorn, and by two persons identified as vice president and loan officer of Plaintiff, and was notarized by a third person. There is in evidence the power of attorney document executed by Ziegenhorn granting Debtor the authority to sign the 2006 Modification on her behalf ("2006 Power of Attorney"). It was dated April 1, 2006, the day after the March 31, 2006 date of the 2006 Modification. The signature line of the 2006 Power of Attorney states it was "Signed in the presence of:" and then contains the signatures of Debtor, Ziegenhorn, and Heather Bendure. It is attested to by a notary in Wayne County, Michigan. It is undisputed that the mechanics of the signing of the 2006 Power of Attorney were that (a) Debtor faxed the document from Michigan to Ziegenhorn in California; (b) Ziegenhorn signed her portion and faxed it back to Debtor; (c)

the remaining portions of the form, including the notary and witness signatures, were thereafter completed in Debtor's office; and (d) Ziegenhorn was not in the physical presence of the notary or the witnesses who signed the document as such. On or about April 6, 2006, Plaintiff disbursed funds to Debtor pursuant to the 2006 Modification, having previously received the 2006 Power of Attorney from Debtor.

Plaintiff now alleges that Debtor committed fraud in his dealings with Plaintiff in obtaining both the 2003 Mortgage and the 2006 Modification and that the full balance of the amount borrowed, as increased by the 2006 Modification, should be held nondischargeable under 11 U.S.C. § 523(a)(2)(A). Plaintiff first alleges that Ziegenhorn's signature on the 2003 Mortgage was ineffective because she admitted she did not sign the February 17, 2003 power of attorney document granting Debtor the authority to sign the 2003 Mortgage on her behalf. Plaintiff asserts Ziegenhorn admitted to such at a May 25, 2011 deposition incident to a California state court action by Plaintiff against Ziegenhorn and another defendant (the exact nature, purpose, or status of such action was not made clear). Plaintiff also alleges that the 2006 Modification was not properly signed and notarized and that Debtor misrepresented to Plaintiff that it was. Debtor moved for summary judgment. Ziegenhorn is not a party to this adversary proceeding.

Section 523(a)(2)(A) provides that a debtor shall not be discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" Because this statute is phrased in the disjunctive, it contains three separate (albeit nuanced) grounds for nondischargeability. Rakich v. Jagiello, 2013 WL 4068166, *5, 8 (Bankr. E.D. Mich. 2013) (citations omitted). "'False pretenses' for purposes of Section 523(a)(2)(A) then may be defined as conscious

3

deceptive or misleading conduct calculated to obtain, or deprive another of, property. It is the practice of any scam, scheme, subterfuge, artifice, deceit or chicane in the accomplishment of an unlawful objective." Id. at *14-15 (quoting In re Kovler, 249 B.R. 238, 261 (Bankr. S.D. N.Y. 2000)). False representation requires proof that:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

In re Grenier, 458 Fed. Appx. 436, 438 (6th Cir. 2012) (quoting In re Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998)). Actual fraud, which is broader than misrepresentation, requires a showing of (1) a course of conduct intended to deceive; (2) justifiable reliance; and (3) proximate causation. In re Vitanovich, 259 B.R. 873, 877 (Bankr. App. 6th Cir. 2001); Rakich v. Jagiello, 2013 WL 4068166 at *6 (citations omitted). A creditor bears the burden of proof by a preponderance. Grogan v. Garner, 498 U.S. 279, 291 (1991). Plaintiff also made reference to § 523(a)(2)(B), which the Court simply finds inapplicable because none of Plaintiff's allegations reference "a statement… respecting the debtor's or an insider's financial condition[.]"

Fed.R.Civ.P. 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Kalamazoo River Study Group v. Rockwell Intern. Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement

4

is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis original). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Williams v. Leatherwood, 258 Fed. Appx. 817, 820 (6th Cir. 2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The Court finds that Debtor is entitled to summary judgment because Plaintiff cannot, as a matter of law, prove that it has suffered damages. There is no genuine issue of material fact that Ziegenhorn in fact signed the 2006 Power of Attorney and that she is in fact obligated on the debt to Plaintiff pursuant to the 2006 Modification. The transcript of Ziegenhorn's deposition in the California state court matter includes her admissions that she did in fact sign the 2006 Power of Attorney. Def. Mot. Sum. J., Dkt. 72, Ex. 3 at 129-130. At the June 25, 2015 hearing on Debtor's Motion, Plaintiff admitted as to such:

> The Court: And even though all of that's true, she [Ziegenhorn] is not asserting any defense or saying "I didn't sign it. You can't sue me."?
>
> Ms. Lambert, for Plaintiff: She's not asserting – She does outright say that that 2006 power of attorney she did sign.
>
> The Court: Right.
>
> Ms. Lambert: And that's in the deposition and you've been provided with the documentation.

Dkt. 81, audio at 14:36. Therefore, notwithstanding the issues Plaintiff now raises with the witnessing and notarization of the 2006 Power of Attorney, it is undisputed that Ziegenhorn personally signed such document and is bound to pay Plaintiff according to the terms of the modified mortgage. Indeed, it is not even a requirement that a power of attorney be notarized, particularly in a situation such as this where it is uncontested that the signing person in fact signed the document. "[A]n acknowledgment is not necessary to give validity to a conveyance,

5

the purpose of acknowledgment being to entitle the instrument to record." Fisher v. Winnie, No. 243369, 2004 WL 594951, at *14 (Mich. Ct. App. Mar. 25, 2004) (quoting Turner v. Peoples State Bank, 299 Mich. 438, 450 (1941)); People v. Marion, 29 Mich. 31, 33 (1874) ("It is very well settled that a deed or a power of attorney may be valid as between the parties, and completely bind the grantor without any acknowledgment, unless the contrary is very plainly enacted."). The position Plaintiff finds itself would be exactly the same, regardless of whether the 2006 Power of Attorney was properly notarized,[1] defectively notarized, or not notarized at all.

Insofar as Plaintiff argued that the original 2003 Mortgage itself was invalid as it pertained to Ziegenhorn, the Court finds that if there was any such defect, she effectively ratified all such obligations by her undisputed signing of, and obligation under, the 2006 Modification incident to the 2003 Mortgage. The 2006 Modification explicitly and specifically referenced the existence of the 2003 Mortgage. Further, Michigan law provides that a mortgage may be ratified by express or implied affirmance, so long as there is knowledge of the material facts relating to the initial contract. U.S. Bank Nat. Ass'n v. Klemm, No. 317235, 2014 WL 6468108, at *2 (Mich. Ct. App. Nov. 18, 2014). Ziegenhorn clearly had notice of the material facts relating to the prior and/or then-contemplated agreements with Plaintiff because she actually signed the 2006 Power of Attorney, which granted Debtor the authority to execute documents incident to a home equity loan relative to this particular property.

As a separate and independent basis, the Court finds that Debtor is entitled to summary judgment because Plaintiff cannot, as a matter of law, prove it justifiably relied on Debtor's

---

[1] Debtor argued the 2006 Power of Attorney was validly witnessed and notarized, pursuant to applicable Michigan law. The Court makes no finding as to this argument.

representations or that such was the proximate cause of its injury. As noted, the 2006 Power of Attorney was dated one day *after* the 2006 Modification was executed. Plaintiff admits it did not have the 2006 Power of Attorney in its possession upon the closing of the 2006 Modification. Indeed, although the 2006 Modification stated that a power of attorney document was attached as an exhibit, that was not in fact true and Plaintiff closed on the 2006 Modification despite this.

Insofar as Plaintiff argues that what it actually relied upon was not the power of attorney document itself (which it obviously could not have relied upon), but rather the Debtor's *representation* that he had such a valid power of attorney document at the time, the Court finds this argument also fails as a matter of law. The above-noted standards of § 523(a)(2)(A) require *justifiable* reliance. Even viewing the situation in the light most favorable to Plaintiff, it cannot be said that Plaintiff justifiably relied on such a representation where it signed, approved, and closed on the 2006 Modification, a document (incorrectly) providing that the power of attorney was attached as an exhibit, and apparently later accepted without question the power of attorney document executed and delivered one day after the execution of the 2006 Modification. Plaintiff could have simply asked that a power of attorney document be produced prior to the closing of the 2006 Modification. Its failure to do so and failure to complain after it actually received the document ratifies the transaction and precludes the now asserted position, and thus precludes a finding of justifiable reliance. See In re Gunner, No. 10-72972, 2013 WL 6628629, at *4 (Bankr. E.D. Mich. Dec. 10, 2013) (plaintiff did not justifiably rely on defendant's silence where plaintiff was mistakenly overpaying defendant).

Therefore, Debtor's Motion for Summary Judgment (Dkt. 72) is granted and Debtor shall present an appropriate order as to that Motion and his Motion to Dismiss (Dkt. 73), which the Court previously granted.

7

**Signed on July 22, 2015**

> **/s/ Walter Shapero**
> **Walter Shapero**
> **United States Bankruptcy Judge**